No. 12,761.

THE STATE OF LOUISIANA VS. FRANK M. ROBERTSON.

Where a party accused of crime .having been tried and found guilty, has appealed and succeeded in having the verdict and judgment against him set aside for erroneous instructions given to the jury, it is ordinarily too late for him, on the return of the case to the trial court, to move to quash the indictment against him. He would have to present a very strong exceptional case to warrant a departure from this rule.

Ordinarily, such a motion should be made before pleading to the indictment.

Objections to a *venire* should properly be urged by motion to set it aside instead of by a motion to quash indictments presented by the grand jury selected and empaneled from its members. State vs. Britton, 50 An. 280.

Where defendant in a criminal case, represented by counsel, seeks to justify tardiness in moving to quash the indictment against him on the ground that the facts therein urged were not known before the motion was made, it should be shown that his counsel, as well as himself, was ignorant of the facts.

APPEAL from the Fourth Judicial District Court for the Parish of Jackson. *M. F. Machen, J.*

*M. J. Cunningham*, Attorney General, *A. B. Hundley*, District Attorney (*P. A. Simmons, Jr.*, of Counsel), for ·Plaintiff, Appellant.

*Fred. W. Price* and *B..P. Edwards* for Defendant, Appellee.

Submitted on briefs March 26, 1898.
Opinion handed down April 4, 1898.
Rehearing refused June 29, 1898.

A regular term of the District Court for the parish of Jackson was begun on Monday, the 15th of February, 1897, on which day a grand jury was empaneled and sworn, and after being charged by the judge, entered upon the discharge of its duties.

On Wednesday, the 17th of February, the grand jury returned an indictment against Frank M. Robertson for manslaughter.

On February 23, 1898, defendant filed a motion to quash the indictment, alleging that the grand jury which found the bill was not drawn and empaneled according to law, and that the grand jury was not a legal grand jury under the laws of ·the United States; that all their acts and findings were illegal, .null and void.

1. That the commissioners were not duly and legally notified to be present at the drawing of said jury, on December 15, 1896, from which drawing the grand jury which found and presented the bill was drawn and made up, and all the jury commissioners were not present at the said drawing; that W. A. Downs, commissioner did not sign the *proces verbal*, and the *proces verbal* did not state whether he was present, and whether he was ever notified or summoned to be present.

2. That· the *proces verbal* of the drawing of the jury failed to state for what term of court the jury was drawn to serve.

3. That the *proces verbal* did not state or recite that the jury ·commissioners were notified of the time and place for drawing the jury, as required by law.

4. That it did not recite by whom the names of the said jury were drawn from the general *venire* box.

5. That the *proces verbal* had never been filed nor recorded by the clerk of the court as required by law.

6. That it was not written in the handwriting of the clerk of the court, nor any of the jury commissioners.

7. That it failed to state that the *venire* was put into an envelope and sealed as the law directs.

8. That it was not properly authenticated.

9. That the *proces verbal* recited in error, that said drawing was in the clerk's office, when, in fact and in truth, it was drawn at the storehonse, or place of the commercial business of W. R. Carroll, and contrary to law.

10. That it stated in error that the witnesses were freeholders, when, in fact and in truth, they owned no land at the time of the drawing.

11. That in addition to the illegalities above stated to the drawing of the jury—that the grand jury which presented the bill were illegally empaneled; that in empaneling the grand jury, the sheriff drew from a box in which the ballots were, the fifteen names which, with the foreman, constituted the grand jury, which presented the bill, instead of drawing same from the sealed envelope as the law directs.

That all of said facts were unknown to the defendant until some time during the month of January, 1898. That from said facts irreparable injury had resulted to the defendant.

Defendant supported the motion by his affidavit.

On the trial of the motion to quash, defendant offered the *proces verbal* of the proceedings of the jury commission as *rem ipsam*, and placed W. R. Carroll, the clerk of the District Court, and *ex officio* one of the jury commission, upon the stand as a witness.

After having caused the witness to testify to the fact that he was clerk of the District Court for the parish of Jackson, he was asked by defendant's counsel where the *venire* or jury was drawn on the 15th December, 1896, when objection was made by the State that the *proces verbal* of the drawing was the best evidence to prove the time and place of drawing—that it was an official document bearing the official seal and signature of a public officer and could not be disproved or attacked by the officer as a witness upon the

stand. The objection was overruled and the witness answered that the *venire* of jurors was drawn at his store; that the *proces verbal* was not in his handwriting, nor in that of any of the jury commissioners. On cross-examination he was permitted to be asked why it was drawn at that place, and answered that it was done as a matter of convenience. Witness testified that the jury commissioners for the year 1896 were W. A. Down, J. S. Moore, T. E. Ray, W. E. Smith and T. J. Smart. That he had summoned all of the commissioners to be present at the drawing; that the signatures of the commissioners affixed to the *proces verbal* and list were the genuine signatures of the parties named, having been made in his presence. Defendant objected to the clerk of the court being questioned as to whether he had summoned all the jury commissioners to attend the drawing on the ground that if such was the fact it should have so appeared on the face of the *proces verbal*, and that that instrument could not be altered, modified, eked out or explained by parol without an allegation of fraud or error. He also objected to the same witness being asked the reason why the *venire* was drawn at his store instead of at the clerk's office, on the ground that the question simply submitted a matter of opinion to the witness, and the answer would be self-serving. The objections being overruled defendant excepted.

Defendant offered an extract from the tax roll of the parish of Jackson for the year 1896, showing the assessment made as to S. M. Talbot. The district attorney objected to the same for the reason that it was a copy of the original, and not admissible until the loss of the original was shown. The objection was overruled and a bill of exceptions was reserved.

The District Court sustained defendant's motion and quashed the indictment.

The State appealed.

———

The opinion of the court was delivered by

NICHOLLS, C. J. This case is before us for the second time. Defendant having been convicted of manslaughter appealed. This court having found error in one of the instructions given to the jury, set aside its verdict and the judgment based upon the same and remanded the cause for further proceedings. The case is reported in 50 An.

The State's contention is that the issues raised by the motion can not be presented for the first time after plea, trial, conviction and sentence. That defendant can not be heard now to raise objections to the manner in which the *venire* was drawn; that they came too late after verdict; *Citing* State vs. Canady and Trimble, 16 An. 141; State vs. Thompson, 28 An. 187; State vs. Watson, 31 An. 379; State vs. Miles, 31 An. 825; State vs. Washington, 33 An. 896; State vs. Wittington, 33 An. 1403; Bishop Criminal Procedure, Secs. 866, 887; Wharton Criminal Pleading and Practice, Secs. 344, 350, 610. That, Mr. Wharton says, "irregularities in selecting and empaneling the grand jury which do not relate to the competency of individual jurors may usually be objected to by challenge to the array or by motion to quash. This must, of course, be before the general issue. Sec. 344." Counsel say: "Besides this the question should have been raised on the first appeal. The judgment thereon is *res judicata* upon every issue involved, whether raised or not. This is the same indictment he was then tried on."

"If the matter be open to inquiry it would be against public policy to permit a public officer to contradict as a witness what he had certified to officially."

Defendant asserts that at the time the motion to quash was filed the plea of not guilty had been withdrawn. That the proceedings of the grand jury were absolutely null, void and without authority of law; that the nullity can be taken advantage of at any time, particularly if it was alleged and shown that he was not before aware of the nullity. That this was not a motion for a new trial, nor in arrest of judgment; it was a motion to quash, after plea to the bill was withdrawn. That there was no issue pending and no issue joined, and the motion was made as early as it was possible to do so at the first term of the court after the discovery. That defendant was deceived by the statement made in the *proces verbal* that the jury was drawn at the court house which statement was clearly put at issue by the motion to quash as error and a fraud on defendant. That he could not be held for laches in not discovering the facts earlier. He cites State vs. Jones, 8 Rob. 617; State vs. Parks, 21 An. 251; State vs. Thompson, 32 An. 879; State vs. Wittington, 33 An. 1403, and State vs. Griffin (not yet reported).

The third section of Act No. 99 of 1896 relative to juries in and for the State of Louisiana, and jury commissioners and their duties,

70

declares that three of the jury commission, together with the clerk of
the District Court, shall be a sufficient number to perform the duties
imposed by the act, provided the members shall have been duly
notified by the clerk of the District Court of the time and place
designated by him for the meeting of said commission, which notifi-
cation shall appear from the certificate of the clerk in case of the
absence of any member thereof.    The fourth and fifth sections fix
the place of meeting at the office of the District Clerk, and direct
that the proceedings shall be conducted in the presence of two or
more competent and disinterested witnesses, freeholders and resi-
dents of the parish; that a *proces verbal* and record of the proceed-
ings and a list of the parties drawn should be kept of each meeting
of the commission, which should be signed by the commissioner
present, the witnesses and the clerk of court.    That a copy of the
*proces verbal* of the meetings of the commission and list of jurors
drawn shall, when completed, be delivered to the sheriff, also a copy
of the list to be published in the official journal of the parish, if
there be one, or in some other newspaper published in the parish.
If there be no official journal or other newspaper in said parish he
is directed to post a copy of such list on the door of the court house.
The eleventh section declares that all objections to the manner of
selecting juries, or to any defect or irregularity that can be pleaded
against any array or *venire*, must be urged on the first day of the
term, or all such objections shall be considered as waived and shall
not afterward be urged.

Notwithstanding the generality of the terms used in this statute,
cases may arise which from their special character and the circum-
stances connected with them may have to be necessarily and unavoida-
bly read out of it as not falling within its grasp.    The remedy resorted
to by the defendant for relief was through a motion to quash the
indictment found against him.    Bishop, in the third edition of his
work on Criminal Procedure, Vol. I, Sec. 762, under the subheading
"When Such Motion Is To Be Made," says:    " The favored time for
this motion, when it is most likely to be granted, is before plea,
and some of the cases appear even to hold that after plea, and
especially after issue joined, it is too late (citing authority).    Hence,
by some tribunals, the motion to quash will be heard only on the with-
drawing of the plea by leave, or if the hearing is simply by consent
of court, it will operate as such withdrawal.    The New Jersey court

deems that to make way for this motion leave to withdraw the plea of not guilty should be granted as of course. But the better doctrine we believe to be that in the absence of statutory changes of common law rules the motion has no relation to any plea; that it should be more favored at an early stage of the proceeding than at a later; that whenever presented the court will exercise its discretion whether or not to hear it then; that it may be heard yet will not ordinarily, even during a trial and even after the evidence is in, and, in short, it is in order without any withdrawal of pleas at any time down to the rendition of the verdict. · After verdict it can not be received." Citing State vs. Barnes, 29 Maine, 561; State vs. Stuart, 23 Maine, 111; Thomasson vs. The State, 22 Georgia, 499; Rice vs. The State, 3 Kansas, 141; State vs. Jarvis, 63 N. C. 556; State vs. McCarty, 4 R. I. 82. .

In order to avoid the effect of this rule of practice and the express provisions of our statute, defendant would have to present a very strong, exceptional case to justify us in granting him relief at this late stage of the proceedings.

He says that he presents such a case, as the law is positive that meetings of the jury commission should be held at the office of the clerk of the District Court; that in State vs. Griffin we declared that a drawing made elsewhere was fatally defective; that he could not be expected to urge an objection of which he had before no knowledge.

The defendant did not, prior to the first trial, make any challenge to the array. He pleaded to the indictment without objection, and was tried by a petty jury of whom he made no complaint. He was found guilty and appealed. The verdict of the jury and the judgment based thereon were set aside on appeal, by reason simply of an erroneous instruction of the court, and the cause was remanded for a new trial. If tried he will go before a jury drawn under new conditions. The particular motion to which defendant has had recourse for relief is leveled exclusively at the legality of the *grand jury* which returned an indictment against him, and to its action in charging him as it did with the crime set out in the indictment. It is not directed against the petty jury which tried him. The special purpose of the motion is to strike at the indictment which was the foundation of the action and force the returning of a new indictment. To permit an accused party to hold such action in reserve until after

verdict and then declare that he was not before advised of the facts upon which such an application rested would have a direct tendency to cause parties to abstain intentionally from making inquiry into matters which vitally affected them, and which inquiry would as well disclose then as later, and enable them after taking the chances of a verdict to set up (should the original indictment be set aside) the intermediate running of the statute of limitation as against a new indictment or information. Such a practice would lead to grave injury in the proper administration of justice, and be justified by no counter injury which would result to the accused by permitting the cause to be carried on under the original indictment. The object of the finding of the indictment was to ascertain through responsible parties whether there existed such a condition of facts as would justify the placing of a particular person upon trial upon a charge of the commission of a particular crime. When matters proceed so far as to reach a verdict of guilty after testimony, taken publicly in open court, contradictorily between the parties without objection to the personnel of the petty jury which found the verdict, we think the danger of any injury having been inflicted upon the accused simply by reason of the place where the grand jury which brought the charge was drawn without any attack upon the personnel of the grand jury rests upon a very narrow basis and is more imaginary than real. The setting aside of a verdict on appeal, of course, withdraws from it any vital force for the purpose of a conviction, but we think it leaves behind it an effect sufficient to enable the indictment on which it is based to withstand any attack upon it certainly in the absence of any charge of its having been returned by prejudice or other improper motives, or by improper persons, or as having been returned without a sufficient basis on which to place the subject matter of the indictment before the country for examination and trial.

We note in this particular case, that while the defendant has taken oath to the fact that neither he nor his attorneys were cognizant of the state of facts on which the motion to qua h is based, that counsel themselves have taken no such oath. The granting of a motion to quash is, we think, more or less a matter of discretion. We see no ground in this case for the exercise of this discretion in favor of the accused; on the contrary, we think that were we to do so it would be on no sufficient basis and would lead up to prejudicial

results as a precedent.    We do not say that some special case might not be presented which would justify exceptional action in this matter.

This view of the situation dispenses us from passing upon other issues, but we can not permit the occasion to pass without expressing our great disapprobation with the course pursued in this case in making out and signing a *proces verbal* containing the recitals found in that filed in this proceeding.    The clerk of the court testified as a witness that the recital made in the *proces verbal*, that " the jury was drawn at the office of the clerk of the District Court," was not true; that it was for convenience drawn at his own store.    In matters affecting the honor, the liberty and the lives of their fellow-citizens, parties charged with public duties should feel a heavier sense of responsibility than was felt by the jury commission and clerk of court in this case.    We need not now decide whether the clerk would or would not be authorized as a witness to contradict facts certified to by him officially, nor whether he should have been called on to amend or have been permitted to amend the *proces verbal*, for we trust this will be the last occasion where such a question will arise.    It is sufficient for us to say that the *proces verbal* directed to be drawn up by Sec. 5 of Act 99 of 1896 is not an authentic act in the sense of Art. 2236 of the Civil Code, and that it can be controverted if erroneous by parties affected by false recitals thereon.    The signatures of the parties to the instrument carry with them simply *prima facie* presumption of the truthfulness of the recitals made. Marvel vs. Manouvrier, 14 An. 5; Grant vs. Harris, 16 An. 323; Hennen's Digest, Vol. 1, page 212, No. 3.

For the reasons herein assigned it is hereby ordered, adjudged and decreed that the action of the District Court in sustaining defendant's motion to quash the indictment found against him herein be and the same is hereby set aside; the indictment is reinstated and the cause is remanded to the District Court for further proceedings according to law.

Rehearing refused June 29, 1898.